UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA  Plaintiff

v.  Criminal Action No. 3:17CR-00104-01-RGJ

DWYANE SHECKLES  Defendant

\* \* \* \* \*

**<u>MEMORANDUM OPINION & ORDER</u>**

This matter comes before the Court on Defendant, Dwayne Sheckles's, two Motions to Suppress. [DE 33, DE 68]. Defendant filed his first Motion to Suppress on January 16, 2018. [DE 33]. Subsequently, after motions for discovery and continuance were filed, an evidentiary hearing was held on April 27, 2018. [DE 55]. A second hearing on the suppression matter was held on May 21, 2018. [DE 58]. Sheckles filed a second Motion to Suppress on August 31, 2018. [DE 68]. Plaintiff, the United States of America, filed timely responses to the Motions to Suppress, [DE 34, 72, 73], and a Reply was filed by Sheckles on September 28, 2018. [DE 76]. On November 11, 2018, United States Magistrate Judge Colin H. Lindsay issued a Findings of Fact, Conclusions of Law, and Recommendation ("R&R") on the remaining issues, recommending that the Motions to Suppress be denied. [DE 78]. Objections were timely filed by Defendant. [DE 79]. These matters are now ripe for adjudication.

For the reasons set forth below, the Court **OVERRULES** Defendant's Objections [DE 79], **ACCEPTS** Magistrate Judge Lindsay's R&R without modification [DE 78] and **DENIES** Defendant's Motions to Suppress [DE 33, 68].

**DISCUSSION**

Sheckles makes no objections to the R&R's factual findings. [DE 78]. As such, those factual findings are incorporated by reference and relied on as true for purposes of discussing Sheckles's objections to the Magistrate Judge Lindsay's legal analysis.

A. **Standard Of Review.**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b)(1), a district court may refer a motion to suppress to a Magistrate Judge to conduct an evidentiary hearing, if necessary, and submit proposed findings of fact and recommendations for the disposition of the motion. This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. *Id.* The Court, however, need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). Rather, the Court may adopt the findings and rulings of the Magistrate Judge to which no specific objection is filed. *Id.* at 151.

B. **Objections To Probable Cause For The Cell Phone Location Tracker.**

Sheckles first objects to "toll analysis" being accepted as contributing to the establishment of probable cause for the cell-phone location tracker instead of being dismissed as wholly conclusory. [DE 79, at 419; DE. 78, at 406]. Sheckles argues that "[t]he magistrate's determination that probable cause existed relied upon the assertion that 'Rivas-Lopez had contacted a drug recipient in Louisville by calling the target phone.' The issuing judge was not provided with any basis to determine the factual nature of that assertion. . ." [DE 79, at 419]. This is the entirety of

Sheckles's objection on this issue. Moreover, this is identical to the argument made by the Defendant in his Motion to Suppress. [DE 33, at 121; 33-2 at 133].

An "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg v. Berryhill*, No. 16-11736, 2017 WL 4296604, at *1 (E.D. Mich. Sept. 28, 2017). Therefore, Sheckles's repetition of the arguments already made in his Motion to Suppress is insufficient to qualify as an objection. As such, the Court need not conduct a *de novo* review of the Magistrate Judge's report with regard to Sheckles's first objection. *Ells v. Colvin*, No. 3:16-CV-00604-TBR, 2018 WL 1513674, at *2 (W.D. Ky. Mar. 27, 2018).

However, even if the Court were to consider the merits of this objection and conduct a *de novo* review, the R&R is well-reasoned on this issue. When a defendant challenges the constitutionality of a warrant-supported search, the court must "simply . . . ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). "[G]reat deference" should be accorded to the magistrate's original determination. *United States v. Leon*, 468 U.S. 897, 914 (1984). A warrant's supporting affidavit establishes probable cause if it contains, on its face, "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal quotations omitted). Those facts must be particularized enough to inform the reviewing magistrate's probable cause determination; "boilerplate recitations designed to meet all law enforcement needs" are inadequate. *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998). Likewise, mere "suspicions, beliefs or conclusions" are insufficient. *Id*.

Here, the detective's affidavit relayed detailed, clear, and precise information from the undercover agent, specifically that Mr. Rivas-Lopez had contacted a drug recipient in Louisville by calling the target phone. It was reasonable to suspect, because the target phone was prepaid, owned by an anonymous person, and was used to contact a drug recipient, that tracking the phone would lead to a drug trafficker and possibly a stash location. After considering the arguments of the parties, the Magistrate Judge properly concluded that probable cause existed and that Defendant's motion to suppress should be denied.

C. **Objections To Probable Cause For Search of Sheckles's Residence.**

Sheckles purports to object to probable cause for the search of his residence on three grounds. First, Sheckles objects to the conclusion that the target pinging outside the apartment to be searched and the fact that Sheckles was seen leaving one of the apartments with many bags was sufficient to establish probable cause to search. [DE 79, at 419; DE 78, at 409]. As to support for this argument Sheckles merely states that "[s]urely this cannot suffice to establish a likelihood of criminal activity." [DE 79, at 419]. This objection is simply factually inaccurate and sets forth no specific error of the Magistrate Judge. [DE 78, at 408-09].

As stated previously, an "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg,* 2017 WL 4296604, at *1. Moreover, Sheckles's purported objection is nothing more than a simple disagreement with Magistrate Judge Lindsay's conclusion on this issue. *U.S. v. Ocampo,* 919 F. Supp.2d 898, 910 (E.D. Mich. 2013). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id.* at 747. Consequently, the filing of vague, general, or conclusory objections does not meet the requirement of specific

4

objections and is tantamount to a complete failure to object. *Id.* at 747–48; *See also, Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995); *Cole v. Yukins,* 7 F. App'x 354, 356 (6th Cir. 2001).

The Sixth Circuit has explained that this specificity requirement is necessary to conserve judicial resources. If review of general objection is permitted, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them and runs contrary to the purposes of the Magistrates Act." *Howard v. Sec. of Health and Human Svc.,* 932 F.2d 505, 509 (6th Cir. 1991). As such, the Court need not conduct a *de novo* review of the Magistrate Judge's report with regard to this objection. *Ells v. Colvin*, No. 3:16-CV-00604-TBR, 2018 WL 1513674, at *2 (W.D. Ky. Mar. 27, 2018).

Even if the Court were to consider the merits of this objection, the R&R is well-reasoned on this issue. The target phone number had already been sufficiently connected to an ongoing drug operation in Louisville. Detectives had relied on "precise information from an undercover agent: that Rivas-Lopez has contacted a drug recipient in Louisville by calling the target phone. It was reasonable to suspect that the target phone, because it was prepaid and owned by an anonymous person, was being used for drug activity." [DE 78, at 406-07]. There was a "fair probability that tracking the phone would lead them to a drug trafficker and his stash location." [DE 78, at 407]. Because it was reasonable to suspect that the phone was being used for drug activity and a fair probability that the phone could lead them to the trafficker and the stash location, the fact that the target phone was pinging outside the apartments to be searched was relevant to the establishment of probable cause.

Additionally, the target phone pinging outside the apartments to be searched and the fact that Sheckles was seen leaving one of the apartments with many bags were not the only facts relied

upon to establish probable cause. The court relied upon many facts including: Sheckles's prior drug trafficking conviction [DE 56, at 246], his presence at the Salmiron stash house in 2016 [DE 56, at 187], GPS pings of the target phone at two apartments – Terrace Creek and Crescent Centre [DE 56, at 192-94; DE 59, at 281], observation of Sheckles's rental car at both apartments [DE 33-3, at 138-39], observation of Sheckles's walking in and out of Crescent Centre with many bags [DE 33-3, at 139], an anonymous complaint of a Crescent Centre employee about drug activity in apartment 234 [DE 59, at 278-80], the smell of marijuana coming from apartment 234 [DE 59, at 280], and the fact that Sheckles's rental car was parked in the Crescent Centre garage in the parking spot reserved for apartment 234 [DE 56, at 192-94; DE 59, at 281]. All of these facts taken together support a finding of probable cause.

Second, Sheckles objects to the "acceptance of the 'characterization of Sheckles as a known narcotics trafficker'" to justify probable cause to search his residence, specifically clarifying that the affidavit mentions him as a "kilogram narcotics trafficker" when his 2005 conviction was for less than a kilogram. [DE 79, at 419; DE 78, at 409]. While Sheckles disagrees with this characterization as a "known narcotics trafficker," the terminology used in the R&R, this argument is directly addressed. Magistrate Judge Lindsay noted that the characterization was not, as Sheckles had argued, solely based on the 2005 conviction, but from the investigation involving the Salmiron stash house in 2016 and from the detective's current investigation. [DE 78, at 409].

Third, Sheckles objects to the finding of a sufficient nexus with Sheckles's residence based on an assertion that it is fair to infer that "drug traffickers use their homes to store drugs." [DE 79, at 420; DE 78, at 409]. Sheckles states that "'[t]o infer permissibly that a drug-dealer's home may contain contraband, the warrant application must connect the drug-dealing activity and the residence.'" *United States v. McCoy*, 905 F.3d 409, 417 (6th Cir. 2018). In this case, Sheckles

6

asserts that the affiant "strung together inferences upon inferences to justify an invasion of Mr. Sheckles' residence." [DE 79, at 420].

Probable cause exists in this case because of the continual and ongoing operation. "When a warrant application presents reliable evidence that a drug-trafficking operation is ongoing, 'the lack of a direct known link between the criminal activity and [dealer's] residence, becomes minimal.'" *United States v. McCoy,* 905 F.3d 409, 417-18 (6th Cir. 2018) (*citing United States v. Newton,* 389 F.3d 631, 635-36 (6th Cir. 2004)); *see United States v. Greene,* 250 F.3d 471, 481 (6th Cir. 2001). In *United States v. Jenkins,* a sufficient nexus between drug-related activity and the defendant's residence was formed because GPS phone ping data linked defendant's cell phone to the residence and a car, seen driven by the defendant after several controlled buys, was registered at the same address.[1] 743 F. App'x 636, 642-44 (6th Cir. 2018). Upon review by the Sixth Circuit, and as noted by the district court, the court concluded that the phone and the GPS data obtained from the phone connected it and the drug activity to the defendant's residence. *Id.* The court also connected the car Howell was spotted in after several controlled buys to the same address. *Id.* Similarly, in this case, an undercover agent provided information about Rivas-Lopez's Louisville operation and the cell phone number of his Louisville distributor. This information along with the phone pings from that number established a continual and ongoing operation.

In June of 2017, DEA agents in Las Cruces, Mexico provided information to the Louisville DEA office that an undercover operation revealed Freddy Rivas wanted to continue sending drugs

---

[1] Controlled buys were staged using a confidential informant from an individual known as "Ghost," later identified as one of the defendants, Howell. *United States v. Jenkins,* 743 F. App'x 636, 638 (6th Cir. 2018). A GPS phone ping search warrant was executed after the first controlled buy. *Id.* The phone was frequently located on Dori Drive during the day and overnight. *Id.* Additionally, the same black Chrysler was seen driven by Howell after some of the buys. *Id.* This car was also registered to the same address on Dori Drive. *Id.* A search warrant was executed on the Dori Drive address and heroin, cash, and firearms were among the items found. *Id.*

to Louisville and was planning a shipment of ten kilograms of cocaine. [DE 56, at 192]. They provided a phone number of the person they believed would receive the cocaine in Louisville. *Id.* Members of the Louisville DEA office and Metro Narcotics obtained a pen register or "ping" order for the phone in early July and used it to connect the phone to the Terrace Creek Apartments, where Sheckles lived. *Id.* Investigators conducted surveillance at the Terrace Creek Apartments and found a white Ford Expedition rented by Sheckles. [DE 56, at 192-94]. The cell phone ping also led investigators to another apartment complex, the Crescent Centre Apartments located at 644 South 3rd Street in Louisville, Kentucky, where they also observed the white Expedition rented by Sheckles. *Id.* Also in early July, Crescent Centre management obtained an anonymous drug trafficking complaint regarding Apartment 234. [DE 1, at 3]. Sheckles's rented car had been parked in the assigned spot belonging to Apartment 234. *Id.* Additionally, during the officer's investigation he also identified the smell of marijuana emanating from Apartment 234. [DE 59, at 280]. Based on these facts, as well as Sheckles's prior conviction for drug trafficking and his relation to the 2016 investigation of the Salmiron stash house, there was a sufficient nexus between the drug related activity and Sheckles's residence.

**D. Objections To Reasonable Suspicion For Investigative Stop.**

Sheckles objects to the Magistrate Judge's conclusion that the officers were justified in initiating the investigative stop. [DE 79, at 420; DE 78, at 410-12]. Sheckles states that "[n]o criminal activity had been observed; no controlled buys had been conducted. Instead, there were suspicions and hunches that were not sufficient to warrant a person of reasonable causation to believe that the seizure of Mr. Sheckles was a reasonable action to take at that time." [DE 79, at 421]. This is identical to the argument made by Sheckles in his Motion to Suppress and his Post-Hearing Brief in Support of Suppression. [DE 33, at 115-16; DE 70, at 369-71].

As stated previously, an "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg,* 2017 WL 4296604, at *1. Moreover, Sheckles's purported objection is nothing more than a simple disagreement with Judge Lindsay's conclusion on this issue. *Ocampo,* 919 F. Supp.2d at 910. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id.* at 747. Consequently, the filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. *Id.* at 747–48; *See also, Miller,* 50 F.3d at 380; *Cole,* 7 F. App'x at 356.

However, even if the Court were to consider the merits of this objection, the R&R is well-reasoned on this issue. An investigative stop must only be supported by reasonable suspicion. *Terry v. Ohio,* 392 U.S. 1, 30 (1968). Reasonable suspicion requires more than a "hunch," but less than probable cause. *United States v. Sokolow,* 490 U.S. 1, 7 (1989). "A suspicious string of separately-innocent acts can be enough to justify a stop." [DE 78, at 411]; *United States v. Arvizu,* 534 U.S. 266, 274-75 (2002).

Here, the police had more than reasonable suspicion to support the stop, they had probable cause. The stop was based on more than "suspicion and hunches," but a string of suspicious acts. These suspicious acts include: Sheckles's prior drug trafficking conviction [DE 56, at 246], observation of Sheckles at the Salmiron stash house in 2016 [DE 56, at 187], phone ping data placing Sheckles cell phone at Terrace Creek and the Crescent Centre [DE 56, at 192-94; DE 59, at 281], observation of Sheckles rental vehicle at Crescent Centre in the spot assigned to Apartment 234 [DE 56, at 192-94; DE 59, at 281], an anonymous employee's complaint about drug activity in Apartment 234 at Crescent Centre [DE 59, at 278-80], and a detective's report of the smell of

marijuana outside of Apartment 234. [DE 59, at 280]. Based on this information, the police had at least reasonable suspicion to support the investigative stop.

### E. Objections To Credibility of Witness Testimony.

Sheckles purports to object to the credibility of witness testimony on two grounds. First, Sheckles objects to the Magistrate's acceptance of the "officer's claims that there was a smell of marijuana emanating from his vehicle." [DE 79, at 421]. Sheckles alleges that "[t]here are no contemporaneous records to that effect…" *Id.* Second, Sheckles objects to the conclusion that the officers' testimony was more credible than Ms. Flores' testimony. [DE 79, at 421; DE 78, at 415]. Sheckles alleges that "[s]uch an assertion essentially means that witnesses for the defense cannot be considered credible…" [DE 79, at 421]. However, "[t]he Magistrate Judge, as the fact-finder who sees and hears the witnesses, is uniquely situated to assess the credibility of the witnesses. Thus, this Court must 'accord[] great deference to such credibility determinations.'" *United States v. Conway,* No. 17-43-DLB-CJS, 2018 WL 3435353, at *5 (E.D. Ky. July 17, 2018); *United States v. Crawford,* No. 17-34-DLB-CJS, 2018 3388135, at * 10 (E.D. Ky. July 12, 2018).

At the Suppression Hearing, Officer Schardein testified that he smelled marijuana during the investigative stop. [DE 56, at 244-45, 249, 255-56]. Magistrate Judge Lindsay was able to assess the credibility of Officer Schardein's testimony and his decision to accept the officer's claim should be given deference despite the lack of a contemporaneous record.

Further in assessing the credibility of all witness' testimony, Judge Lindsay found the officer's testimony more credible that Ms. Flores's for two reasons. [DE 78, at 415]. First, the officers' testimony was corroborated by each other. *Id.* The results of the search also corroborated the officers' testimony as they found exactly what Ms. Flores indicated they would find. *Id.* Second, Ms. Flores's "interest in the outcome of this case are severe." *Id.* She is in a relationship

with Sheckles, has a child with him, and relies upon him as a source of financial support. *Id.* For these reasons, Magistrate Judge Lindsay determination that the officer's testimony was more credible should be accorded deference.

## CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The **Report** and **Recommendation** of the United States Magistrate Judge, [DE 78], is accepted **without modification** as the findings of fact and conclusions of law of this Court;

(2) Defendant's Objections, [DE 79], are overruled as set forth herein;

(3) Defendant's Motions to Suppress, [DE 33, DE 68], are **DENIED;** and

(4) This matter is scheduled for a **Status Conference** on **January 31, 2019 at 2:00 p.m.** before the Honorable Rebecca Grady Jennings at the Gene Snyder United States Courthouse.