UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Plaintiff |
| v. | Criminal Action No. 3:17-cr-00104-RGJ |
| DWAYNE SHECKLES | Defendant |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Dwayne Sheckles's Motion to Suppress Evidence. [DE 90]. Briefing is complete, and the Motion is ripe. [*See* DE 95; DE 101]. For the reasons below, the Court **DENIES** Sheckles's Motion.

## BACKGROUND

In 2017, the Drug Enforcement Administration's Louisville District Office ("LDO") and Louisville Metro Narcotics ("Metro Narcotics") began investigating potential drug trafficking activities allegedly involving Sheckles. [DE 1, Compl. at 3]. Law enforcement obtained a tracking warrant that "pinged" the location of Sheckles's mobile phone, eventually leading them to Crescent Centre Apartments ("Crescent Centre"), located at 644 South 3rd Street in Louisville, Kentucky. [DE 56, Tr. Supp. Hearing Vol. I at 193:16–19].

On July 11, 2017, Detectives Evans and Bowling observed Sheckles's rented Ford Expedition parked in Crescent Centre's secure parking garage. [DE 1, Compl. at 3]. Detectives Evans and Bowling physically entered the parking garage on that date. [DE 56, Tr. Supp. Hearing Vol. I at 221:16–18].

On July 12th, Detective Evans spoke with Crescent Centre management, which informed him of an anonymous complaint that drugs were being sold from Apartment 234. [*Id.* at 194:18–

25, 195:1–4]. Detective Evans reviewed surveillance footage of the parking garage and observed Sheckles exiting his vehicle in Apartment 234's designated space. [*Id.* at 195:7–19]. Crescent Centre management then brought Detective Evans to view a nearby vacant apartment, where Detective Evans "smelled a strong odor of marijuana coming from 234." [*Id.* at 280:18–23].

Later, LDO and Metro Narcotics observed Sheckles leaving Crescent Centre and conducted an investigative stop. [DE 1 at 3]. DEA Agent Sanders and members of Metro Narcotics smelled marijuana coming from the vehicle. [*Id.*]. K-9 handler Detective Brett Hankison received a positive indication from K-9 Franklin on the vehicle. [*Id.*]. Upon search of the vehicle, Detective Hankison recovered a handgun from the center console. [*Id.*].

On July 13th, Officer Evans applied for and received a warrant to search Apartment 234 based on probable cause established prior to the July 12th stop. [*Id.* at 3–4]. During the search, LDO seized approximately 1,565 grams of suspected heroin and 144 grams of crystal methamphetamine. [*Id.* at 4]. LDO also seized two handguns and an AR 15 rifle. [*Id.*]. Later that day, the United States filed a criminal complaint against Sheckles on charges related to drug possession and trafficking, and gun possession. [DE 1; DE 22; DE 98].

On January 16, 2018, Sheckles moved to suppress, among other things, the Crescent Centre search. [DE 33 at 117–20]. Then, on August 31, 2018, Sheckles moved to suppress cell phones seized during a separate incident in March 2017. [DE 68]. The Court referred the motions to Magistrate Judge Lindsay who, after a two-day evidentiary hearing, recommended in a Findings of Fact, Conclusions of Law, and Recommendation ("R&R") that the Court deny both motions in their entirety. [DE 78]. Sheckles filed timely objections to the R&R. [DE 79]. The Court overruled Sheckles's objections and adopted the R&R without modification. [DE 80].

On April 2, 2019, Sheckles filed a second Motion to Suppress Evidence related to the Crescent Centre search warrant. [DE 90]. The United States filed a timely response [DE 95], and Sheckles filed a timely reply [DE 101].

**DISCUSSION**

Sheckles argues that fruits of the Crescent Centre search warrant should be suppressed because Detectives Evans and Bowling unlawfully entered the Crescent Centre parking garage on July 11th. [DE 90 at 465]. Sheckles asserts that the detectives' observation of Sheckles's vehicle parked in Apartment 234's designated space formed a critical part of the probable cause supporting the search warrant. [*Id.*]. Specifically, Sheckles claims that "the only alleged probable cause to search the apartment came from the unlawful access into the locked parking garage, which led to Evans[] discovering Sheckles'[s] vehicle parked in a spot for a particular apartment number, which led to questioning management about that apartment, which led to learning of the complaint about drug use in that apartment." [*Id.* at 466–67]. Thus, according to Sheckles, any evidence originating from the unlawful parking-garage search, including the traffic stop and search warrant, must be suppressed as fruit of the poisonous tree. [*Id.* at 467].

The United States opposes Sheckles's motion in its entirety and argues that "the earlier two-day evidentiary hearing on suppression offers ample evidence of the sufficiency of the probable cause supporting the search warrant for the Crescent Centre apartment," and thus law enforcement had independent sources of information to support the warrant. [DE 95 at 492–93].[1]

---

[1] Alternatively, the Unites States argues that the Court should hold a second evidentiary hearing to resolve disputed facts raised in Sheckles's motion, including whether the detectives had authority to enter the Crescent Centre parking garage on July 11th and whether the detectives could observe Sheckles's vehicle from outside the parking garage. [DE 95 at 492]. Sheckles also favors a second evidentiary hearing. [DE 101 at 548]. But for the reasons in this opinion, a second evidentiary hearing is unnecessary.

"The independent[-]source rule holds that evidence will be admitted if the government shows that it was discovered through sources 'wholly independent of any constitutional violation.'" *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (quoting *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996)). In deciding whether the independent-source rule allows the admission of evidence that would otherwise be excluded, courts "should keep in mind the underlying question: 'whether, granting establishment of the primary illegality, [the evidence has] been come at by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Leake*, 95 F.3d at 412 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). "If the application for a warrant contains probable cause apart from the improper information, then the warrant is lawful and the independent[-]source doctrine applies, providing that the officers were not prompted to obtain the warrant by what they observed during the initial entry." *Jenkins*, 396 F.3d at 758 (internal quotation marks and citation omitted); *see also Murray v. United States*, 487 U.S. 533, 542 n.3 (1988) ("To determine whether the warrant was independent of the illegal entry, one must ask whether it would have been sought even if what actually happened had not occurred . . . .").

During the two-day evidentiary hearing on Sheckles's previous motions to suppress, Detectives Evans and Bowling testified to information unrelated to their entry into the Crescent Centre parking garage that provided an independent basis for the search warrant. Disregarding the events of July 11th, the undisputed facts show that the detectives initially learned of Sheckles's affiliation with the Crescent Centre complex after a tracking warrant "pinged" Sheckles's phone at that location. [DE 56, Tr. Supp. Hearing Vol. I at 193:16–19]. Detective Evans spoke with Crescent Centre management, letting them know that law enforcement had a subject who was "possibly selling drugs out of *one of their units*." [DE 59, Tr. Supp. Hearing Vol. II at 278:16–25,

4

279:1–19 (emphasis added)].[2] Management then informed Detective Evans of the anonymous narcotics complaint for Apartment 234. [*Id.*]. Detective Evans reviewed Crescent Centre surveillance video and observed Sheckles exit his vehicle in the spot designated for Apartment 234. [*Id.* at 279:20–25]. Crescent Centre management brought Detective Evans to view a nearby apartment, where Detective Evans "smelled a strong odor of marijuana coming from 234." [*Id.* at 280:18–23].

Considered together, these facts show that law enforcement had ample justification, wholly independent of the detectives' allegedly unlawful entry into the parking garage, to support its search warrant.[3] Contrary to Sheckles's assertion, the detectives' entry into the parking garage on July 11th was not a critical part of the probable cause supporting the search warrant. Indeed, the detectives were first drawn to Crescent Centre because of the lawfully obtained tracking warrant, and Detective Evans's conversation with Crescent Centre management and subsequent review of the complex's surveillance footage provided the same information that the detectives would have observed from entering the parking garage—*i.e.*, Sheckles's connection with Apartment 234. This and the other facts outlined above provided sufficient probable cause for the search warrant, and there is no evidence that the garage entry specifically prompted law enforcement to obtain the warrant. Sheckles thus fails to meet his burden. *See Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978)

---

[2] The parties dispute whether Detective Evans informed Crescent Centre management that a subject was potentially selling drugs out of their units generally or Apartment 234 specifically. [*See* DE 90 at 465; DE 95 at 493]. That said, Sheckles presents no facts in the record suggesting that Detective Evans, based on his entry into the garage on July 11th, specifically asked management about Apartment 234. Conversely, Detective Evans, as noted above, testified that law enforcement had a subject who was potentially selling drugs out of "one of their units." [DE 59, Tr. Supp. Hearing Vol. II at 278:16–25, 279:1–19]. And Detective Bowling testified that Detective Evans asked management "about the general building where we were getting the pings," and "[b]y coincidence, they said that they had recently received a narcotics complaint -- anonymous narcotics complaint on an apartment, 234." [DE 56, Tr. Supp. Hearing Vol I at 194:21–25, 195:1–4].

[3] Because law enforcement had an independent basis for the search warrant, the Court need not consider whether the detectives' entry into the parking garage was unlawful.

5

("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." (citations omitted)).

## CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT HEREBY ORDERS** that Sheckles's Motion to Suppress [DE 90] is **DENIED**.

Cc: Counsel of record